HILL *v.* STATE.*

(Division B.    March 4, 1929.)

[120 So. 817.    No. 27631.]

*Corpus Juris-Cyc. References: Criminal Law, 17CJ, section 3615, p. 282, n. 50.

*W. E. McIntyre* and *J. C. Murray,* for appellants.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

ETHRIDGE, P. J. Geneva Hill was indicted at a special term of the circuit court of Rankin county for the murder of Willie Clemons, alleged to have occurred in May, 1928. The indictment was returned and filed September 12, 1928, and the defendant was arraigned on the 14th day of September 1928, and filed a motion on September 17th, for a continuance of the case because of the absence of the witness Dora Morrow. It was alleged in the motion, supported by affidavit, that said witness was not absent because of the connivance or consent of the defendant, but that the defendant had used due diligence to procure the attendance of said witness, having had a subpoena issued and placed in the hands of the sheriff of Rankin county, commanding him to summon said witness, and that the defendant was advised the witness resided at Pelahatchie, in Rankin county, Mississippi, but that said witness was absent from Pelahatchie; that her

parents resided at Pelahatchie; and that defendant expected to have said witness present at a later day of the term, or at the next term of court. She further alleged that she (defendant) had been absent several months, and had had no communication with the witness Dora Morrow, or any other person in said town; that this defendant was only indicted at the recent term of court, and since her arraignment has done everything in her power to make ready for trial; that if the said Dora Morrow were present she would swear as a witness in defendant's behalf that said witness was present with the deceased, Willie Clemons, immediately preceding the shooting, and heard the deceased threaten the life of defendant, and that deceased was the assailant, and attacked defendant with a pocketknife, attempting to take the life of defendant, and that said witness would testify that defendant acted wholly and absolutely in self-defense; and that said Dora Morrow was the only person by whom she could establish these facts.

This application was overruled, and a second motion was filed on the 17th day of September, 1928, alleging that said Dora Morrow was only temporarily absent from the state of Mississippi, and that if the cause was continued said witness could be present at this term of court; that the defendant had already exercised due diligence in endeavoring to ascertain the whereabouts of said witness, and that, if given a sufficient time, the same can be ascertained; that the said absent witness had appeared in the justice of the peace court at the preliminary hearing of this cause, and that it was the belief of affiant that said witness was not endeavoring to evade the process of this court; and that she believed, if the witness had known of this special term, and that her presence would be required, she would have been present to testify; and reaffirmed her allegations made in the preceding motion.

When this second motion was presented, the district attorney stated to the court that he wanted to cross-examine defendant on this motion, to which defendant, by counsel, objected, which objection the court overruled, exceptions were taken and then the district attorney elicited from defendant the fact that there were a number of persons present, who defendant stated were summoned by her as her witnesses, but she stated that she did not see some of them present at the time of the killing. The district attorney also put on other witnesses, by one of whom he proved that said witness Dora Morrow left the town of Pelahatchie about three weeks after the killing, and had not been back since; that said absent witness had married in Birmingham, but stated to him that she was going to Memphis when she left Pelahatchie; and that he did not know where she was, and had not seen her since she left shortly after the killing.

It was also proved by the deputy sheriff, who had the process to serve upon the defendant, that he went to Pelahatchie and to the residence of her parents in that place, and they stated that she was married; that she married in Birmingham, but they did not say when she would be back, or where she was living, except that she was living in Alabama. The clerk of the court also testified as to the number of witnesses summoned for the defendant, all of whom were present, except this particular witness.

The application was overruled, and the defendant put to trial, and a number of witnesses testified both for the state and for the defendant; many of them being witnesses of the killing. The defendant also testified in her own behalf on the merits of the trial. The only assignments of error related to the motion for continuance. The first is that the court erred in permitting the district attorney, over the objection of defendant, to examine her upon her application for a continuance.

It appears that, when the district attorney requested permission to examine defendant on her application for a continuance, he presented the statute to the court, but just what statute does not appear. It appears to be the theory of the state, however, that the district attorney had the right to examine the defendant under the provisions of section 581, Hemingway's 1927 Code (section 784, Code of 1906). This section provided that in a motion for continuance the attorneys on the opposite side may cross-examine, and may introduce evidence for the purpose of showing the court that the continuance should be denied. It is contended by appellant that this section is not applicable to criminal trials. It will be noted that the section referred to is under the chapter on circuit courts. In the chapter on criminal procedure, section 1319, Hemingway's 1927 Code (section 1498, Code of 1906), continuances are also dealt with, and it provides that in all cases of applications for continuances "it shall be lawful for the state or the defendant to make any admission of any fact sought to be proved by the other party by any absent witness, and such admission shall have the same effect as if the absent witness or other evidence were present in court, and no more; but if compulsory process will probably obtain the attendance of the absent witness, and the defendant have not had opportunity of obtaining such process, the cause shall be continued, unless the defendant desire a trial."

It seems to us that the first section referred to is intended to deal with civil matters, and that section 1319, Hemingway's 1927 Code (section 1498, Code of 1906), was intended to deal with continuances in criminal cases. This view is strengthened by section 560, Hemingway's 1927 Code (section 763, Code of 1906), which provides for a bill of particulars if the pleading in any case "be in vague and general terms, or do not specify the circumstances or the occasions on which the pleader re-

lies, and the opposite party satisfy the court, by affidavit, that for the purpose of prosecution or defense at the trial it is necessary that his adversary be more specific, the court may order a bill of particulars to be rendered specifying time, place, and circumstances relied upon, and persons present, or, in case of contractual demands, more particularly itemizing the claim,'' etc.

This court held that this section did not apply to criminal cases, and that the indictment itself was the only bill of particulars required by the law. *Sanders v. State,* 141 Miss. 289, 105 So. 523. It is doubtful whether section 581, Hemingway's 1927 Code, could be upheld, if construed to apply to criminal cases, because it is provided therein that the accused shall not be required to give evidence against himself, and also that he shall have process to obtain witnesses in his behalf. If the defendant may be examined on an application for a continuance, where would an examination thus permitted stop?

In many applications for continuances, the examination might be very searching, and, in many cases, would touch upon the merits of the case. The provisions of section 26, and various other sections of the Constitution embraced in the Bill of Rights, are for the benefit of the citizen, and in derogation of the authority of the state, and should be construed in favor of the citizen. *Falkner v. State,* 134 Miss. 253, 98 So. 691; Mississippi Constitutions, p. 45 et seq.; section 26, Constitution of 1890; Mississippi Constitutions, pp. 130, 133, and 143. In construing a statute, where there are two reasonable constructions that can be placed upon it, the court will adopt that which relieves the statute from constitutional objections, and places it in harmony with constitutional provisions and public policy.

In the case of *Hubbard v. State,* 64 Miss. 315, 1 So. 480, the court held that the defendant therein was entitled to stand upon his application for a continuance. In that

case, the defendant was called to the stand and testified on the motion for a continuance, and the district attorney agreed that the application for a continuance should be admitted on the hearing of the case, and that the absent witness would testify as therein set forth; but, after the evidence on the motion was introduced, the district attorney then called the attorney representing the defendant, and, over objections, had him to testify as to statements made on the oral hearing of the motion, which resulted in contradicting the statements made in the motion, and the court reversed the case for so doing. In that case, however, that was highly prejudicial testimony, because the application for a continuance was agreed to be admitted in evidence, and the effect of the testimony of defendant's attorney destroyed the effect of facts agreed to be admitted. The provision for examining the applicant in section 581, Hemingway's 1927 Code, was not in the statute as it existed in the Code of 1880. It appears to have been the view of the court that the defendant could not be examined on the motion for an application for continuance, and section 26, of the Constitution, was enacted with this view of the court, no doubt, in the minds of the members of the convention, and we do not think the constitutional convention intended to adopt any other view than that of the defendant's right to testify applied to every stage of the trial. In order to secure the rights guaranteed by the Constitution it frequently became necessary to have a cause continued, and a motion for a continuance is a part of the trial, and necessary to secure fundamental rights, and it would be an unsafe practice or rule to permit a defendant to be forced on the witness stand to testify in any part of the trial.

Applying these principles to the motion before us, we think section 581, Hemingway's 1927 Code, is not applicable to criminal prosecutions, but, looking at the trial

as a completed trial, we think this was harmless error in this case, for the reason that, apart from the testimony of the defendant, the application was insufficient, in that it failed to show that the witnesses were within the jurisdiction of the court, and that a postponement of the case would result in securing the presence of the witness Dora Morrow. It is true the defendant said she expected Dora Morrow would testify as stated above, and that she expected to be able to obtain Dora Morrow's presence; but the application showed that the defendant had not communicated with said witness, and did not know where said witness was living, and there was nothing in the application to make it appear that said witness could be obtained at a later day of that term of court. It further appeared from the record that a number of eyewitnesses testified favorably to the defendant, and she herself testified on her own behalf to facts, which, if believed by the jury, would result in her acquittal.

Taking, as a whole, all of these things, and looking at the trial as completed, we are unable to say that the court was in error in overruling the application for a continuance, and the examination of the defendant on the motion does not appear to have resulted in her injury, as she voluntarily testified, giving a detailed statement of the homicide from her own point of view. There being no reversible error, the judgment of the court below will be affirmed, notwithstanding the error of examining defendant.

*Affirmed.*